IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: | ETHICON, INC. PELVIC REPAIR SYSTEMS PRODUCT LIABILITY LITIGATION | MDL No. 2327 |

THIS DOCUMENT RELATES TO:

Cases Identified in the Exhibit
Attached Hereto

MEMORANDUM OPINION AND ORDER
(*Daubert* Motion re: Daniel Elliott, M.D.)

Pending before the court is the Motion to Exclude Certain General Opinions of Daniel Elliott, M.D. [ECF No. 2082] filed by Johnson & Johnson and Ethicon, Inc. (collectively "Ethicon"). The Motion is now ripe for consideration because briefing is complete.

I.   Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 75,000 cases currently pending, approximately 30,000 of which are in this MDL.

In this MDL, the court's tasks include "resolv[ing] pretrial issues in a timely and expeditious manner" and "resolv[ing] important evidentiary disputes." Barbara J. Rothstein & Catherine R. Borden, Fed. Judicial Ctr., *Managing Multidistrict*

*Litigation in Products Liability Cases* 3 (2011). To handle motions to exclude or to limit expert testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the court developed a specific procedure. In Pretrial Order ("PTO") No. 217, the court instructed the parties to file only one *Daubert* motion per challenged expert, to file each motion in the main MDL—as opposed to the individual member cases—and to identify which cases would be affected by the motion. PTO No. 217, at 4.[1]

## II. Preliminary Matters

Before plunging into the heart of the Motion, a few preliminary matters need to be addressed.

I am compelled to comment on the parties' misuse of my previous *Daubert* rulings on several of the experts offered in this case. *See generally Sanchez v. Bos. Sci. Corp.*, No. 2:12-cv-05762, 2014 WL 4851989 (S.D. W. Va. Sept. 29, 2014); *Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501 (S.D. W. Va. 2014); *Eghnayem v. Bos. Sci. Corp.*, 57 F. Supp. 3d 658 (S.D. W. Va. 2014). The parties have, for the most part, structured their *Daubert* arguments as a response to these prior rulings, rather than an autonomous challenge to or defense of expert testimony based on its reliability and relevance. In other words, the parties have comparatively examined expert testimony and have largely overlooked *Daubert*'s core considerations for assessing expert

---

[1] Ethicon identified the Wave 1 cases affected by this Motion in its attached Exhibit A [ECF No. 2082-1], which the court has attached to this Memorandum Opinion and Order. At the time of transfer or remand, the parties will be required to designate relevant pleadings from MDL 2327, including the motion, supporting memorandum, response, reply, and exhibits referenced herein.

testimony. Although I recognize the tendency of my prior evidentiary determinations to influence subsequent motions practice, counsels' expectations that I align with these previous rulings when faced with a different record are misplaced, especially when an expert has issued new reports and given additional deposition testimony.

Mindful of my role as gatekeeper for the admission of expert testimony, as well as my duty to "respect[ ] the individuality" of each MDL case, *see In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006), I refuse to credit *Daubert* arguments that simply react to the court's rulings in *Sanchez* and its progeny. Indeed, I feel bound by these earlier cases only to the extent that the expert testimony and *Daubert* objections presented to the court then are identical to those presented now. Otherwise, I assess the parties' *Daubert* arguments anew. That is, in light of the particular expert testimony and objections currently before me, I assess "whether the reasoning or methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. Any departure from *Sanchez*, *Eghnayem*, or *Tyree* does not constitute a "reversal" of these decisions and is instead the expected result of the parties' submission of updated expert reports and new objections to the expert testimony contained therein.

Finally, I have attempted to resolve all possible disputes before transfer or remand, including those related to the admissibility of expert testimony pursuant to *Daubert*. Nevertheless, in some instances I face *Daubert* challenges where my interest in accuracy counsels reserving ruling until the reliability of the expert

3

testimony may be evaluated at trial. At trial, the expert testimony will be tested by precise questions asked and answered. The alternative of live *Daubert* hearings is impossible before transfer or remand because of the numerosity of such motions in these seven related MDLs. As these MDLs have grown and the expert testimony has multiplied, I have become convinced that the critical gatekeeping function permitting or denying expert testimony on decisive issues in these cases is best made with a live expert on the witness stand subject to vigorous examination.

In the course of examining a multitude of these very similar cases involving the same fields of expertise, I have faced irreconcilably divergent expert testimony offered by witnesses with impeccable credentials, suggesting, to me, an unreasonable risk of unreliability. The danger—and to my jaded eye, the near certainty—of the admission of "junk science" looms large in this mass litigation.

The parties regularly present out-of-context statements, after-the-fact rationalizations of expert testimony, and incomplete deposition transcripts. This, combined with the above-described practice of recycling expert testimony, objections, and the court's prior rulings, creates the perfect storm of obfuscation. Where further clarity is necessary, I believe it can only be achieved through live witness testimony—not briefing—I will therefore reserve ruling until expert testimony can be evaluated firsthand.

### III.   Legal Standard

By now, the parties should be intimately familiar with Rule 702 of the Federal Rules of Evidence and *Daubert*, so the court will not linger for long on these

standards.

Expert testimony is admissible if the expert is qualified and if his or her expert testimony is reliable and relevant. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 597. An expert may be qualified to offer expert testimony based on his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Reliability may turn on the consideration of several factors:

> (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592–94). But these factors are neither necessary to nor determinative of reliability in all cases; the inquiry is flexible and puts "principles and methodology" above conclusions and outcomes. *Daubert*, 509 U.S. at 595; *see also Kumho Tire Co. v. Carmichael*, 525 U.S. 137, 141, 150 (1999). Finally, and simply, relevance turns on whether the expert testimony relates to any issues in the case. *See, e.g.*, *Daubert*, 509 U.S. at 591–92 (discussing relevance and helpfulness).

At bottom, the court has broad discretion to determine whether expert testimony should be admitted or excluded. *Cooper*, 259 F.3d at 200.

## IV. Discussion

Dr. Elliott is a urogynecologist and an associate professor of urology at the Mayo School of Graduate Medical Education.

5

### a. MSDS

Ethicon seeks to preclude Dr. Elliott from using the MSDS—specifically the MSDS statement that polypropylene is incompatible with strong oxidizers—as the basis for his opinion that Ethicon's mesh should not be used in the vagina. Ethicon argues that the MSDS "provides no support for the opinions expressed" because the MSDS "does *not* forbid implantation in humans." Mem. 19 [ECF No. 2085]. Ethicon also seems to argue that Dr. Elliott is unqualified to offer opinions based on the MSDS because Dr. Elliott does not know how the MSDS was prepared.

The plaintiffs do not respond to the MSDS-related objections, and the court will not make arguments for them. Accordingly, Ethicon's Motion is **GRANTED** to the extent it seeks to preclude Dr. Elliott from opining that Ethicon's mesh should not be used in the vagina on the basis of the MSDS.

### b. Properties

Ethicon seeks to exclude Dr. Elliott's testimony linking alleged degradation to any clinical harm because he has not provided a reliable basis for this claim. Dr. Elliott acknowledges in his deposition that there are no studies establishing the correlation. Although the lack of literature alone is not fatal, Dr. Elliott does not provide the court with any scientific basis for his opinion, either in his expert report or in response to the Motion. Accordingly, Dr. Elliott's testimony linking degradation to clinical harm is **EXCLUDED** and Ethicon's Motion on this point is **GRANTED**.[2]

---

[2] One note of clarification: Ethicon does not challenge Dr. Elliott's testimony that degradation occurs,

6

Ethicon also asks the court to exclude testimony about shrinkage and contraction because the medical literature Dr. Elliott cites addresses hernia mesh, not SUI mesh. The plaintiffs respond that "Dr. Elliott has made clear why it is appropriate to extrapolate the hernia data," citing to deposition testimony and explaining that the mesh at issue is identical and the vagina would be subject to even more contraction than the abdomen. Resp. 19 [ECF No. 2181]. Ethicon's objections are better suited for cross-examination. The court **DENIES** Ethicon's Motion on this matter.

The court also **DENIES** Ethicon's contention that Dr. Elliott is unqualified to opine on the tensioning of the TVT mesh as without merit. Dr. Elliott's experience as a urogynecologist who surgically removes mesh devices, combined with his review of the medical literature, qualifies him to opine on matters involved in proper surgical placement of the TVT device.

Ethicon also seeks to exclude Dr. Elliott's testimony that the "TVT has the 'potential' for being cytotoxic" because it is too speculative. Mem. 20. Qualifying an opinion or expressing varying degrees of certainty in a statement does not make it speculation or automatically render it unreliable. *See, e.g.*, *Daubert*, 509 U.S. at 590 ("[I]t would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science.") Accordingly, to the extent Ethicon seeks to exclude Dr. Elliott's opinions on cytotoxicity as unreliable, its motion is **DENIED**.

---

so I make no judgment as to the reliability of that testimony.

### c. Marketing

Ethicon argues that Dr. Elliott should not be permitted to provide opinions regarding Ethicon's successful marketing strategies. Nothing in the record indicates that Dr. Elliott is qualified to offer such opinions. Further, these opinions amount to discussions of corporate conduct and state-of-mind, which have been consistently precluded. These opinions are **EXCLUDED**.

### d. Alternative Designs and Products

*First*, Ethicon argues that Dr. Elliott should not be permitted to testify that alternative procedures are safer than Ethicon's mesh products. Expert testimony on this subject, Ethicon claims, is not relevant. The relevance of this expert testimony is better decided on a case-by-case basis. Accordingly, I **RESERVE** ruling on this matter until trial.

Ethicon objects to the reliability of Dr. Elliott's expert testimony about whether alternative procedures are safer than Ethicon's mesh products. In my view, the reliability of this expert testimony is heavily dependent on Dr. Elliott's clinical experiences.[3]

In the abstract, experience—on its own or accompanied by little else—is a reliable basis for expert testimony. *See Kumho*, 526 U.S. at 156. But the reliability inquiry must probe into the relationship between the experience and the expert

---

[3] Ethicon argues that Dr. Elliott ignored relevant medical literature. However, Dr. Elliott's expert testimony is not subject to exclusion based on this contention because he does explain why he discounted certain studies.

testimony:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.

Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Here, the court does not have enough information to judge the reliability or relevance of Dr. Elliott's particular experience.

In this specific context, I am without sufficient information at this time to draw the fine line between reliable and unreliable expert testimony based primarily on an expert's clinical experiences. Accordingly, I **RESERVE** ruling until further testimony may be offered and evaluated firsthand at trial.

*Second*, Ethicon claims Dr. Elliott is not qualified to offer expert testimony about alternative designs (e.g., mesh with larger pore size or less weight). Considering Dr. Elliott's medical education and background and his vast experience treating patients with mesh complications, he is qualified to testify about whether one mesh product is safer than another. Ethicon's Motion is **DENIED** on this point.

Ethicon wages a multi-faceted challenge to the reliability of Dr. Elliott's expert testimony about alternative designs. According to Ethicon, Dr. Elliott makes assertions without supportive studies or sources and relies on studies of meshes that are not used in the treatment of SUI. The plaintiffs respond by directing the court to the studies Dr. Elliott read, the Ethicon documents he reviewed, and the clinical experience he has had. Specifically, the plaintiffs argue that Dr. Elliott's reliance on data from studies of non-SUI meshes is appropriate because he explains why it is

9

appropriate to consider results from non-SUI mesh studies when assessing meshes used from the treatment of SUI. However, like the testimony above, the lynchpin of Dr. Elliott's testimony is his experience. And as noted above, I am without information sufficient to assess whether this is a reliable foundation. So I **RESERVE** ruling until further testimony may be offered and evaluated firsthand at trial.

*Finally*, Ethicon asks the court to exclude Dr. Elliott's expert testimony that laser-cut mesh is a safer alternative to mechanical-cut mesh. During his deposition, Dr. Elliott clearly stated that he does not believe mechanical-cut mesh presents more or less risk than laser-cut mesh. *E.g.*, Elliott Dep. 226:20–21 ("I don't think overall there's going to be a higher risk from one or the other."); Elliott Dep. 228:16–17 ("I am not here today to say that laser cut is better or worse."). Accordingly, Ethicon's Motion is **GRANTED** on this point.

V. **Recurring Issues**

Many of the *Daubert* motions filed in this MDL raise the same or similar objections.

One particular issue has been a staple in this litigation, so I find it best to discuss it in connection with every expert. A number of the *Daubert* motions seek to exclude FDA testimony and other regulatory or industry standards testimony. To the extent this Motion raises these issues it is **GRANTED in part** and **RESERVED in part** as described below.

I have repeatedly excluded evidence regarding the FDA's section 510(k) clearance process in these MDLs, and will continue to do so in these case, a position

that has been affirmed by the Fourth Circuit. *In re C. R. Bard, Inc.*, 81 F.3d 913, 921–23 (4th Cir. 2016) (upholding the determination that the probative value of evidence related to section 510(k) was substantially outweighed by its possible prejudicial impact under Rule 403). Because the section 510(k) clearance process does not speak directly to safety and efficacy, it is of negligible probative value. *See In re C. R. Bard*, 81 F.3d at 920 ("[T]he clear weight of persuasive and controlling authority favors a finding that the 510(k) procedure is of little or no evidentiary value."). Delving into complex and lengthy testimony about regulatory compliance could inflate the perceived importance of compliance and lead jurors "to erroneously conclude that regulatory compliance proved safety." *Id.* at 922. Accordingly, expert testimony related to the section 510(k) process, including subsequent enforcement actions and discussion of the information Ethicon did or did not submit in its section 510(k) application, is **EXCLUDED**. For the same reasons, opinions about Ethicon's compliance with or violation of the FDA's labeling and adverse event reporting regulations are **EXCLUDED**. In addition to representing inappropriate legal conclusions, such testimony is not helpful to the jury in determining the facts at issue in these cases and runs the risk of misleading the jury and confusing the issues. Insofar as this Motion challenges the FDA-related testimony discussed here, the Motion is **GRANTED**.

    A number of experts also seek to opine on Ethicon's compliance with design control and risk management standards. Some of this testimony involves the FDA's quality systems regulations, and some—likely in an attempt to sidestep my

11

anticipated prohibition on FDA testimony—involve foreign regulations and international standards. I find all of this proposed testimony of dubious relevance. Although these standards relate to how a manufacturer should structure and document risk assessment, the standards do not appear to mandate any particular design feature or prescribe the actual balance that must be struck in weighing a product's risk and utility. Nor is it clear that the European and other international standards discussed had any bearing on the U.S. medical device industry when the device in question was being designed.

Nevertheless, because the nuances of products liability law vary by state, I will refrain from issuing a blanket exclusion on design process and control standards testimony, whether rooted in the FDA or otherwise. Each standard must be assessed for its applicability to the safety questions at issue in this litigation, consistent with state law. I am without sufficient information to make these findings at this time. Accordingly, I **RESERVE** ruling on such matters until a hearing, where the trial judge will have additional context to carefully evaluate the relevance and potential prejudicial impact of specific testimony.

Similarly, I doubt the relevance of testimony on the adequacy of Ethicon's clinical testing and research, physician outreach, or particular product development procedures and assessments otherwise not encompassed by the above discussion. Again, such matters seem to say very little about the state of the product itself (i.e., whether or not it was defective) when it went on the market. But because the scope of relevant testimony may vary according to differences in state products liability law,

I **RESERVE** ruling on such matters until they may be evaluated in proper context at a hearing before the trial court before or at trial.

Additional—and more broad—matters also warrant mention. While some of these concerns may not apply to this particular expert, these concerns are raised so frequently that they are worth discussing here.

*First*, many of the motions seek to exclude state-of-mind and legal-conclusion expert testimony. Throughout these MDLs, the court has prohibited the parties from using experts to usurp the jury's fact-finding function by allowing testimony of this type, and I do the same here. *E.g.*, *In re C. R. Bard, Inc.*, 948 F. Supp. 2d 589, 611 (S.D. W. Va. 2013); *see also, e.g.*, *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) ("Inferences about the intent and motive of parties or others lie outside the bounds of expert testimony."). Additionally, an expert may not offer expert testimony using "legal terms of art," such as "defective," "unreasonably dangerous," or "proximate cause." *See Perez v. Townsend Eng'g Co.*, 562 F. Supp. 2d 647, 652 (M.D. Pa. 2008).

*Second*, and on a related note, many of the motions seek to prohibit an expert from parroting facts found in corporate documents and the like. I caution the parties against introducing corporate evidence through expert witnesses. Although an expert may testify about his review of internal corporate documents solely for the purpose of explaining the basis for his or her expert opinions—assuming the expert opinions

13

are otherwise admissible—he or she may not offer testimony that is solely a conduit for corporate information.

*Third*, many of the motions also ask the court to require an expert to offer testimony consistent with that expert's deposition or report or the like. The court will not force an expert to testify one way or another. To the extent an expert offers inconsistent testimony, the matter is more appropriately handled via cross-examination or impeachment as appropriate and as provided by the Federal Rules of Evidence.

*Fourth*, in these *Daubert* motions, the parties have addressed tertiary evidentiary matters like whether certain statements should be excluded as hearsay. The court will not exclude an expert simply because a statement he or she discussed may constitute hearsay. *Cf. Daubert*, 509 U.S. at 595. Hearsay objections are more appropriately raised at trial.

*Finally*, in some of the *Daubert* motions, without identifying the expert testimony to be excluded, the parties ask the court to prevent experts from offering other expert testimony that the moving party claims the expert is not qualified to offer. I will not make speculative or advisory rulings. I decline to exclude testimony where the party seeking exclusion does not provide specific content or context.

## VI. Conclusion

The court **DENIES in part**, **GRANTS in part**, and **RESERVES in part** the Motion to Exclude Certain General Opinions of Daniel Elliott, M.D. [ECF No. 2082].

The court **DIRECTS** the Clerk to file a copy of this Memorandum Opinion and Order in 2:12-md-2327 and in the Ethicon Wave 1 cases identified in the Exhibit attached hereto.

ENTER: August 26, 2016

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO ETHICON WAVE 1 CASES | Master File No. 2:12-MD-02327<br>MDL No. 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |

**EXHIBIT A TO MOTION TO EXCLUDE CERTAIN GENERAL OPINIONS OF DANIEL ELLIOTT, M.D.**

**ALL CASES PERTINENT TO MOTION**

1. *Joan Adams v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01203 (Prolift);

2. *Donna Amsden v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00960 (Prolift);

3. *Dina Sanders Bennett v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00497 (Prolift & TVT-Secur);

4. *Sharon Boggs, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00368 (TVT-O & Prolift);

5. *Myra Byrd, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00748 (TVT-O);

6. *Sharon Carpenter, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00554 (Prolift);

7. *Melissa Clayton, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00489 (Prolift);

8. *Carey Beth Cole, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00483 (Prolift);

9. *Fran Denise Collins v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00931 (TVT-O);

10. *Mary F. Cone v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00261 (TVT-O);

11. *Amanda Deleon, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00358 (Prolift);

12. *Dina Destefano-Raston, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01299 (TVT-O);

13. *Carol Jean Dimock v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00401 (Prolift & TVT-O);

14. *Karen Forester, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00486 (TVT-O);

15. *Betty Funderburke v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00957 (Prolift & TVT);

16. *Teresa Georgilakis, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00829 (TVT-O);

17. *Pamela Gray-Wheeler v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00455 (Prolift & TVT-Secur);

18. *Susan Guinn v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01121 (TVT-O);

19. *Rocio Herrera-Nevarez v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01294 (TVT-O);

20. *Barbara Hill, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00806 (Prolift);

21. *Joyce Justus v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00956 (Prolift);

22. *Barbara Kaiser v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00887 (Prolift);

23. *Diane Kropf, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01202 (Prolift & TVT-O);

24. *Heather Long v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-001275 (TVT);

25. *Donna Loustaunau, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00666 (Prolift);

26. *Deborah Lozano, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00347 (Prolift && TVT-O);

27. *Dee McBrayer, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00779 (Prolift Posterior);

28. ~~*Tina Morrow, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00378 (Prolift Total & TVT-O);~~ **(Wave 2 case)**

29. *Cynthia Nix v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01278 (Prolift Anterior, Prolift Total & TVT-O);

30. *Mary Jane Olson, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00470 (Prolift Total & TVT-O);

31. *Noemi Padilla, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00567 (Prolift +M Posterior);

32. *Patti Ann Phelps, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01171 (TVT);

33. *Rebecca Pratt v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01273 (TVT);

34. *Maria Eugenia Quijano v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00799 (TVT);

35. *Penny Rhynehart v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01119 (Prolift Total & TVT-O);

36. *Debra Schnering, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01071 (TVT);

37. *Donna Shepherd v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00967 (TVT-Secur);

38. *Teri Key Shively v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00379 (Prolift Posterior & TVT-O);

39. *Cherise Springer, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00997 (TVT-O);

40. *Maria C. Stone, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00652 (Prolift Posterior);

41. *Charlene Logan Taylor v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00376 (Prolift Posterior & TVT-O);

42. *Kimberly Thomas v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00499 (Prosima Anterior & TVT-O);

43. *Mary Thurston, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00505 (TVT);

44. *Judy G. Williams v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00657 (Prolift Posterior & TVT-O);

45. *Nancy Williams v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00511 (Prolift Total & TVT-O);

46. ~~*Blynn Wilson v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00921 (Prolift Total);~~ **(Closed)**

47. *Christine Wiltgen, et al. v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-01216 (TVT); and

48. *Sandra Wolfe v. Ethicon, Inc., et al.*, Civil Action No. 2:12-cv-00335 (Prolift Total & TVT-O).

* Defendants reserve the right to supplement this list should any plaintiff designate Dr. Elliott as general causation expert in MDL Wave 1.